*453 OPINION.
Green:
The question here is whether the moneys and properties transferred by Parker from the petitioner to the Stenman Company during 1918 and 1919 amounted to embezzlement, thereby entitling the petitioner to a deduction from gross income on account of “ losses sustained ” during 1918 and 1919, respectively, or whether such transfers were in fact tona -fide advances and sales to the Stenman Company, in which case the petitioner would only be entitled to a deduction for “bad debts” in the year in which such debts were ascertained to be worthless and charged olf. The petitioner claims that Parker’s actions amounted to embezzlement, whereas the Commissioner contends they were tona -fide advances and sales. The petitioner relies on section 234(a) (4) of the Revenue Act of 1918, whereas the Commissioner relies on section 234(a) (5) thereof. Sub-paragraphs (4) and (5) of section 234(a), supra, provide as follows:
Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
* * . * * * * *
(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise;
(5) Debts ascertained to be worthless and charged off within the taxable year.
Embezzlement losses not compensated for by insurance or otherwise are deductible in the year in which they are “ sustained ” rather than in the year in which they are first discovered. They are deductible as “ losses sustained ” rather than as “ debts ascertained to be worthless.” Appeals of Emil Stern, et al., 5 B. T. A. 89. See also Appeal of Webb & Bocorselski, Inc., 1 B. T. A. 871. Appeals of J. A. Bentley, et al., 5 B. T. A. 314. National Sash & Door Co. v. Commissioner, 5 B. T. A. 931.
Did the petitioner sustain embezzlement losses as a result of Parker’s actions or were such losses as it suffered essentially in the nature of bad debts? We do not believe that the moneys and properties transferred by Parker from the petitioner to the Stenman Company during 1918 and 1919 were in fact tona fide advances and sales to the latter company. In our opinion the facts as set out in the findings clearly show that the transactions between the petitioner and the Stenman Company were inherently fraudulent on the part of Parker. He as an officer of the petitioner “ ostensibly loaned ” cash and machinery to an insolvent corporation principally owned by him *454 self and his housekeeper. He also “ disposed ” of certain raw materials to the same insolvent corporation. He was in control of both corporations and can not be said not to have had knowledge of the financial condition of the Stenman Company. He personally took $7,050 in cash during 1919 and later had it charged to the Stenman Company. In order to set at rest Priest’s suspicions, Parker ordered ' the bookkeeper to make an entry as of December 31, 1918, which had the effect of reducing the “ accounts receivable ” (the only item Priest had ever inquired about) in the amount of $13,294.56. Although Parker told the bookkeeper he had received a note for $13,294.56 from the Stenman Company, it appears that he never signed or delivered such note, as it was found unsigned among the Stenman Company effects, by the public accountant, in 1921. He then denied all knowledge of the note. Parker ordered several employees whom Priest was likely to meet if he visited the plant not to mention the Stenman Company or the transactions had with such company. Cash was advanced to the Stenman Company at times when the petitioner needed it. Raw materials were transferred to the Stenman Company when they were needed by the petitioner, resulting in delay in filling orders and dissatisfaction among the petitioner’s customers. The Stenman Company was a competitor making practically the same line of goods. Valuable orders obtained after long effort by salesmen for the petitioner were transferred to the Stenman Company, together with the materials necessary to make the articles so ordered. An employee was assigned to duty with the Stenman Company by Parker but paid by the petitioner. Parker made false statements to Priest and the other stockholders in rendering annual reports when he represented that business would have been larger except for the inability to get raw materials, when at the same time he was disposing of badly needed raw materials to the Stenman Company. Materials were transferred to the Stenman Company at carload lot prices, which were 15 or 16 per cent under cost prices on the hundredweight basis. Parker’s conversation with Priest in December 1921, when detailed statements were demanded, shows a guilty mind.
In our opinion all of the foregoing circumstances clearly show Parker’s intent to fraudulently manage the petitioner’s affairs to its detriment and to the benefit of himself and his housekeeper, through his artificial creature, the Stenman Company. We think that under such circumstances the losses suffered by the petitioner are not essentially in the nature of bad debts but come within the embezzlement decisions cited above.
None of the losses sustained by the petitioner during 1918 and 1919 on account of Parker’s actions between it and the Stenman *455 Company were compensated for by insurance or otherwise. We are, therefore, of the opinion that the petitioner is entitled to deduct under section 234(a) (4) of the Revenue Act of 1918 the amounts of $17,936.08 and $20,875.23 as losses sustained during 1918 and 1919, respectively. The deficiencies should be recomputed accordingly.

Judgment will he entered on 15 days’ notice, under Rule 50.

Considered by Steenhagen, Lansdon, and Artjndell.